**\*\*\*FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER\*\*\***

**Electronically Filed
Supreme Court
SCWC-16-0000368
08-JAN-2021
08:00 AM
Dkt. 22 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

LANCE M. WATANABE,
Petitioner/Appellant-Appellant/Cross-Appellee,

vs.

ADMINISTRATIVE DIRECTOR OF THE COURTS, STATE OF HAWAI'I,
Respondent/Appellee-Appellee/Cross-Appellant.

SCWC-16-0000368

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000368; CIV. NO. 3CC151000052)

JANUARY 8, 2021

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS, JJ.

OPINION OF THE COURT BY NAKAYAMA, J.

Petitioner/Appellant-Appellant/Cross-Appellee Lance M.

Watanabe (Watanabe) was employed as a carpenter for the State of

Hawai'i (the State) and applied for service-connected disability

retirement benefits after suffering a back injury. Following various administrative proceedings, Respondent/Appellee-Appellee/Cross-Appellant Employees' Retirement System, State of Hawaiʻi (ERS) issued a proposed decision on October 11, 2011 denying Watanabe's application on the merits and notifying Watanabe that the decision would become final unless Watanabe filed exceptions within fifteen days. On October 26, 2011, ERS received a document filed by Watanabe entitled "Petitioner's Proposed Decision," which was a copy of ERS's own proposed decision with multiple underscored insertions and a single "lined out" paragraph. This case centers on whether the document filed by Watanabe — Petitioner's Proposed Decision — constituted exceptions.

Almost two years after Watanabe's filing, ERS contacted Watanabe to schedule an exceptions hearing, but reserved the issue of whether Watanabe's filing actually constituted exceptions. Following the hearing, the ERS Board issued a final decision concluding that Watanabe's filing did not constitute exceptions and confirming its denial of his application.

Watanabe appealed to the Circuit Court of the Third Circuit (circuit court), arguing both the merits of his disability claim and that the ERS Board's proposed decision did

not automatically become a final decision because Watanabe had timely filed exceptions.  The circuit court affirmed the ERS Board's decision without ruling on whether Watanabe's filing constituted exceptions.

Watanabe appealed to the Intermediate Court of Appeals (ICA).  The ICA held that Petitioner's Proposed Decision did not constitute exceptions and affirmed the circuit court's decision.

In his application for writ of certiorari, Watanabe maintains that Petitioner's Proposed Decision filing constituted exceptions and that the ICA and ERS misinterpreted the administrative rule to require a rigid format for exceptions, thus denying Watanabe a meaningful opportunity to be heard.

To resolve this case, we must consider what level of formality Hawai'i Administrative Rules (HAR) § 6-23-19 requires for exceptions.  Section 6-23-19 specifies that any party may file exceptions to a proposed decision and request review within fifteen days.  In Hawaii Laborers' Training Ctr. v. Agsalud, 65 Haw. 257, 259, 650 P.2d 574, 576 (1982), this court held that an agency's refusal to consider an appellant's timely filed exceptions based on the agency's rigid interpretation of its own rule violated Hawai'i's Administrative Procedures Act (APA).

In this case, Watanabe met the minimum requirements for exceptions because he: (1) filed within fifteen days of the

3

agency's proposed decision; (2) specified his points of exception by either striking through, or, inserting underscored text in the agency's proposed decision; and (3) for several of the points, cited to exhibits in the record. Having timely filed his exceptions, Watanabe was entitled to present argument on his exceptions to the ERS Board and to have the Board consider the merits of his exceptions.

Accordingly, we vacate the ICA's August 20, 2019 Judgment on Appeal which affirmed the circuit court's April 5, 2016 (1) Decision and Order Affirming the Final Decision of the ERS Board and Dismissing Appellant Watanabe's Appeal; and (2) Final Judgment. We remand this case to the ERS Board for further proceedings consistent with this opinion.

## I. BACKGROUND

On November 24, 2008, Watanabe applied for service-connected disability retirement benefits for an injury that occurred on January 25, 2005.

Prior to his application for disability retirement, Watanabe worked as a Carpenter I for the State for more than ten years.

## A. Administrative Proceedings

By letter dated March 25, 2010, the ERS Board notified Watanabe that it proposed to deny his application based on its

4

determination that Watanabe's injury was not service-connected. Watanabe retained counsel and brought a contested case proceeding to appeal the ERS Board's preliminary determination. Following the contested case hearing, an ERS hearing officer issued a Recommended Decision recommending that the ERS Board affirm its preliminary decision denying Watanabe's application because Watanabe failed to establish that his permanent incapacity was work-related.

The ERS Board adopted the hearing officer's Recommended Decision as its Proposed Decision dated October 11, 2011 (ERS Board's Proposed Decision). The ERS Board mailed a copy of its Proposed Decision to Watanabe's counsel by certified mail. Both the ERS Board's Proposed Decision and accompanying cover letter informed Watanabe that, under HAR § 6-23-19,[1] parties may file exceptions and request review

---

[1]    HAR § 6-23-19 (2009) states:

> (a) Within fifteen days after receipt of a copy of the board's proposed decision, any party may file with the board exceptions to any part thereof and request review by the board. Each exception shall specify the portion of the record and authorities relied on to sustain each point. Eight copies of the exceptions and request for review shall be filed with the board. In addition, a copy of the exceptions and request for review shall be served upon each of the parties who were served with a copy of the proposed decision.
>
> (b) Any party may apply for an extension of time within which to file exceptions to the proposed

(continued . . .)

within fifteen days of receipt.  In addition, both documents advised Watanabe that he could apply for an extension of time to file exceptions, but that if no exceptions or extension was received within fifteen days of receipt of the ERS Board's Proposed Decision, "the Proposed Decision shall become final." Watanabe's counsel received the ERS Board's Proposed Decision on October 17, 2011.

On October 25, 2011, Watanabe's counsel filed a letter and document entitled "Petitioner's Proposed Decision."  The cover letter sent with Petitioner's Proposed Decision stated only:

> Dear Sir/Madam:
>
> This is Petitioner's Proposed Decision.  The changes are underlined or lined out.
>
> Please do not hesitate to call should you have any questions.

The enclosed Petitioner's Proposed Decision was a copy of the ERS Board's Proposed Decision, with multiple underscored

---

(continued . . .)
decision by filing two copies of a written application setting forth the reasons for the request. The application shall be filed before the expiration of the period prescribed for the filing of exceptions. Upon good cause shown, the board, or any member of the board, may extend the time for filing exceptions for an additional period not to exceed fifteen days.

(c) If no exceptions and request for review are filed within the time specified, the proposed decision shall become final, unless the board on its own motion orders further proceedings to be held.

insertions and a single "lined out" paragraph.

By letter dated July 10, 2013 — almost two years after Watanabe filed Petitioner's Proposed Decision — the ERS Board notified Watanabe's counsel that it would contact him to schedule an exceptions hearing.  The letter informed Watanabe that the ERS Board still had "substantial questions as to whether the documents [Watanabe] submitted to the ERS by letter dated October 25, 2011, constituted 'exceptions' and/or complied with the requirements of [HAR § 6-23-19]" and that the ERS Board was reserving the issue.

By letter dated May 15, 2014, the ERS Board notified Watanabe and the State that it had "substantial doubts as to whether the October 25, 2011 letter and Petitioner's Proposed Decision qualify as exceptions to the Proposed Decision and a request for review under HAR § 6-23-19[]" and that ERS was reserving the issue.  The letter advised the parties to prepare to offer argument at the hearing on all issues, including inter alia, whether Petitioner's Proposed Decision qualified as exceptions and a request for review under HAR § 6-23-19 and the merits of Watanabe's exceptions.

Following an exceptions hearing, the ERS Board issued its Final Decision on January 14, 2015.  In its Final Decision, the ERS Board found that Petitioner's Proposed Decision did not

constitute exceptions under HAR § 6-23-19 and thus the ERS Board's Proposed Decision became a final decision. Accordingly, the ERS Board "confirm[ed] its denial of [Watanabe's] application for service-connected disability retirement benefits."

B.    Circuit Court Proceedings

On February 13, 2015, Watanabe filed a Notice of Appeal to the circuit court.[2]  Before the circuit court, Watanabe argued that the ERS Board's conclusion that he was not entitled to service-connected disability retirement benefits was clearly erroneous.

ERS argued that the circuit court lacked jurisdiction over the ERS Board's Proposed Decision denying Watanabe's application because Watanabe failed to timely appeal.  ERS maintained that because Watanabe did not file exceptions in conformance with HAR § 6-23-19,[3] the ERS Board's Proposed Decision became final on November 1, 2011 — fifteen days after it was served on Watanabe.  Thus, ERS claimed that Watanabe's appeal was untimely because it was not filed within thirty days after November 1, 2011.  ERS contended that, even if the circuit

---

[2]    The Honorable Greg K. Nakamura presided.

[3]    ERS argued that Petitioner's Proposed Decision did not satisfy the requirements of HAR § 6-23-19(a), because the filing failed to specify the portion of the record and authorities upon which it relied.

8

court found that Petitioner's Proposed Decision constituted exceptions and his appeal was timely, Watanabe still failed to prove that his permanent incapacity was work-related.

In response to ERS's claim that the circuit court lacked jurisdiction to review the ERS Board's Proposed Decision, Watanabe argued that his appeal was timely because he filed Petitioner's Proposed Decision, which met the published requirements of HAR § 6-23-19(a) for exceptions.  Watanabe asserted that, pursuant to HAR § 6-23-21,[4] once he filed exceptions, the ERS Board's Proposed Decision could not become a final decision until the ERS Board held a hearing on his exceptions and rendered a final, written decision.

Following a hearing, the circuit court entered its Decision and Order Affirming the Final Decision of the ERS Board (Circuit Court Decision).  The circuit court made no explicit finding as to whether Petitioner's Proposed Decision satisfied the requirements of HAR § 6-23-19(a) for exceptions.[5]

---

[4]     HAR § 6-23-21 provides in relevant part:

>        (a) Where exceptions have been filed to the board's proposed decision, the board, within sixty days after the hearing on the exceptions, shall render its final decision.

(Emphasis added.)

[5]     Presumably, the circuit court concluded that the Petitioner's Proposed Decision did not constitute exceptions within the meaning of HAR § 6-23-19(a) because it omitted any reference to this filing in the Circuit Court Decision.

Nonetheless, the circuit court proceeded to address the merits of Watanabe's disability claim. The circuit court concluded that the ERS Board's determinations in its Final Decision[6] were supported by substantial evidence and not clearly erroneous. Accordingly, the circuit court affirmed the ERS Board's Final Decision and entered Final Judgment in favor of ERS.

## C. ICA Proceedings

Watanabe timely filed a notice of appeal and ERS filed a notice of cross-appeal.

On appeal, Watanabe argued that the circuit court erred by affirming the ERS Board's Final Decision and that ERS's interpretation that Petitioner's Proposed Decision did not qualify as exceptions under HAR § 6-23-19 was not entitled to deference.

In its cross-appeal, ERS claimed that (1) the circuit court erred by reaching the merits of Watanabe's claim without first determining that it had appellate jurisdiction; and (2) neither the ICA nor the circuit court had jurisdiction to review the ERS Board's Proposed Decision because Watanabe's

---

[6]     The Circuit Court Decision affirmed the ERS Board's Final Decision but treated the Final Decision as adopting the ERS Board's findings of fact and conclusions of law from the ERS Board's Proposed Decision. While the ERS Board's Final Decision did not expressly state that it adopted the Proposed Decision, it did attach the Proposed Decision as an exhibit to its Final Decision. In addition, the ERS Board's Final Decision "confirm[ed]" the ERS Board's previous denial of Watanabe's application.

10

appeal to the circuit court was untimely.

The ICA filed a Summary Disposition Order on July 26, 2019.  First, the ICA addressed ERS's cross-appeal challenging the circuit court's lack of jurisdiction over the merits of Watanabe's application for service-connected disability benefits.  As a threshold issue, the ICA concluded that Petitioner's Proposed Decision did not constitute exceptions under HAR § 6-23-19, because it failed to state that it was an appeal, identify any points of error or portion of the record, contain any argument, or cite any authorities.  Based on its conclusion that Watanabe failed to file exceptions, the ICA reasoned that the ERS Board's Proposed Decision became final on November 1, 2011.  Thus, the ICA concluded that because Watanabe did not appeal to the circuit court within thirty days of November 1, 2011, the circuit court lacked jurisdiction to review the merits of Watanabe's claim.

Second, the ICA held that the circuit court had jurisdiction only to review the procedural matters addressed by the ERS Board in its January 14, 2015 Final Decision — namely, whether Watanabe had timely filed exceptions.  Accordingly, the ICA held that the circuit court erred in addressing the merits of Watanabe's claim, but that the error was harmless because the circuit court affirmed the ERS Board's Final Decision.

11

Therefore, the ICA affirmed the Circuit Court's Decision and Final Judgment.

## II.   STANDARDS OF REVIEW

### A.   Secondary Appeals

> Review of a decision made by the circuit court upon its review of an administrative decision is a secondary appeal. Ahn v. Liberty Mut. Fire Ins. Co., 126 Hawaiʻi 1, 9, 265 P.3d 470, 478 (2011) (citation omitted). The circuit court's decision is reviewed de novo. Id. The agency's decision is reviewed under the standards set forth in HRS § 91-14(g). Id. HRS § 91-14(g) (1993) provides:
>
> > (g)   Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
> >
> > (1)   In violation of constitutional or statutory provisions; or
> > (2)   In excess of the statutory authority or jurisdiction of the agency; or
> > (3)   Made upon unlawful procedure; or
> > (4)   Affected by other error of law; or
> > (5)   Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> > (6)   Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
>
> Under HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6). Sierra Club v. Office of Planning, 109 Hawaiʻi 411, 414, 126 P.3d 1098, 1101 (2006) (citation, internal quotation marks and brackets omitted).

Liberty Dialysis-Hawaii, LLC v. Rainbow Dialysis, LLC, 130

Hawaiʻi 95, 102-03, 306 P.3d 140, 147-48 (2013).

## B.    Interpretation of Agency Rules

> General principles of statutory construction apply in interpreting administrative rules.  As in statutory construction, courts look first at an administrative rule's language.  If an administrative rule's language is unambiguous, and its literal application is neither inconsistent with the policies of the statute the rule implements nor produces an absurd or unjust result, courts enforce the rule's plain meaning.  While an agency's interpretation of its own rules is generally entitled to deference, this court does not defer to agency interpretations that are plainly erroneous or inconsistent with the underlying legislative purpose.

Id. at 103, 306 P.3d at 148 (internal quotation marks and citations omitted).

## III.   DISCUSSION

Watanabe argues that the ERS Board misinterpreted the standard for exceptions under HAR § 6-23-19 and erroneously concluded that Petitioner's Proposed Decision did not constitute exceptions.  Watanabe also contends that the ICA erred by affirming the ERS's misinterpretation of HAR § 6-23-19 and holding that Watanabe failed to timely appeal the ERS Board's Proposed Decision.  According to Watanabe, the ERS Board's and ICA's interpretation of HAR § 6-23-19 imposes a higher standard on petitioners seeking to begin the appeal process and amounts to a denial of due process.

ERS contends that Petitioner's Proposed Decision does not meet the requirements of HAR § 6-23-19 because, inter alia, it "merely propose[s] 'changes'" to ERS's Proposed Decision and

13

does not clearly express that it sets forth Watanabe's exceptions. Similarly, the ICA concluded that Petitioner's Proposed Decision did not meet the standard for exceptions because "[i]t did not express that it was an appeal from the Proposed Decision; identified no points of error within the Proposed Decision; and contained no argument, specification of the portion of the record, or authorities to sustain any alleged point of error in the Proposed Decision." (Footnotes omitted.)

We agree with Watanabe that Petitioner's Proposed Decision constituted exceptions because it met the general requirements for exceptions under the plain language of HAR § 6-23-19. HAR § 6-23-19 does not require that exceptions be labeled as exceptions or an appeal, or even contain points of error or argument. Furthermore, imposing a higher standard for formalities would undermine the purpose of filing exceptions, which is to allow a claimant a meaningful opportunity to be heard.

First, the plain language of HAR § 6-23-19(a) provides the minimum requirements for the filing of exceptions:

> Within fifteen days after receipt of a copy of the board's proposed decision, any party may file with the board exceptions to any part thereof and request review by the board. Each exception shall specify the portion of the record and authorities relied on to sustain each point.

(Emphasis added.) Thus, HAR § 6-23-19(a) requires that

exceptions: (1) be filed within fifteen days;[7] and (2) specify the portion of the record and authorities relied on to sustain each point.

We hold that Petitioner's Proposed Decision filing satisfies the standard for exceptions set forth in HAR § 6-23-19(a). In Petitioner's Proposed Decision, Watanabe struck through the portion of the ERS Board's Proposed Decision that he disagreed with and inserted underscored language to indicate his amendments and additions. Several of the underscored amendments in Petitioner's Proposed Decision specified the authorities relied on, which were exhibits in the administrative record. Petitioner's Proposed Decision disputed numerous factual findings, an ERS Board member's testimony regarding the definition of "accident" for disability retirement purposes, and the conclusions of law that Watanabe's permanent disability was not service-connected. In sum, Petitioner's Proposed Decision specified Watanabe's points of exception by either striking through or amending and/or inserting underscored text and citing the pertinent exhibits in the record. Consequently, Petitioner's Proposed Decision meets the minimum

---

[7]      ERS does not dispute that Petitioner's Proposed Decision was filed within fifteen days of receipt. Arguably, ERS might presume that filings by claimants within fifteen days after a proposed decision are likely exceptions, particularly when the filing proposes "changes" to the proposed decision.

requirements for exceptions outlined in HAR § 6-23-19(a).

Second, the purpose of filing exceptions is to ensure that a claimant has a meaningful opportunity to be heard, not to impose a procedural barrier.

> The Administrative Procedure Act is a remedial statute designed to give citizens a fair opportunity to be heard before the official of the agency who is charged with passing on [his] case.

Agsalud, 65 Haw. at 259, 650 P.2d at 576. The ERS Board's conclusion that Petitioner's Proposed Decision did not constitute exceptions under HAR § 6-23-19 effectively creates a heightened pleading requirement that is neither present in the administrative rule, nor supported by the rule's authorizing statute. See Hawai'i Revised Statutes (HRS) § 91-11 (2012).[8] As this court has previously stated, agency proceedings are by

---

[8]    HRS § 91-11 (2012) is the authorizing statute for HAR § 6-23-19. HRS § 91-11 states:

> **Examination of evidence by agency.** Whenever in a contested case the officials of the agency who are to render the final decision have not heard and examined all of the evidence, the decision, if adverse to a party to the proceeding other than the agency itself, shall not be made until a proposal for decision containing a statement of reasons and including determination of each issue of fact or law necessary to the proposed decision has been served upon the parties, and <u>an opportunity has been afforded to each party adversely affected to file exceptions and present argument to the officials</u> who are to render the decision, who shall personally consider the whole record or such portions thereof as may be cited by the parties.

(Emphasis added.)

their nature "simple and non-technical hearings" in which "informal proceedings supersede rigid and formal pleadings and processes." Cariaga v. Del Monte Corp., 65 Haw. 404, 409, 652 P.2d 1143, 1147 (1982) (internal citation omitted). The ERS Board's refusal to consider Watanabe's filing as exceptions because it was not labeled as such ignores the purpose of the APA, which is "to give citizens a fair opportunity to be heard before the official of the agency" who is deciding his case. See Agsalud, 65 Haw. at 259, 650 P.2d at 576.

Third, this court has previously rejected an agency's refusal to consider exceptions based on the agency's rigid interpretation of its own rule. Agsalud, 65 Haw. at 258, 650 P.2d at 575. In Agsalud, the appellant filed general exceptions within fifteen days after receipt of the agency's recommended decision because he was unable to have the record transcribed with the fifteen-day period. Id. The hearing officer refused to consider the appellant's timely exceptions "because they [did] not conform to [the rule]" and approved the agency's preliminary decision as final. Id. at 258, 650 P.2d at 575. This court held that the agency's refusal to consider the appellant's exceptions violated the APA. Id. at 259, 650 P.2d at 576. "Appellant, having timely filed exceptions, was entitled to the opportunity to present argument in written or oral form in

17

support of its exceptions and to have those exceptions considered on their merits based on the record." Id.

Thus, the plain language of HAR § 6-23-19, the purpose behind the APA, and this court's prior precedent all support our conclusion that Petitioner's Proposed Decision constituted exceptions and that the ERS Board was required to consider Watanabe's exceptions before rendering its final decision. Because the ERS Board's Final Decision erroneously determined that Petitioner's Proposed Decision did not conform to the rule, the ERS Board refused to consider the merits of Watanabe's exceptions. Consequently, the ERS Board has not complied with HRS § 91-11[9] because it has not considered Watanabe's exceptions and afforded him an opportunity to present argument on his exceptions.

Here, the ICA erred by affirming the Circuit Court's Decision and Final Judgment affirming the ERS Board's denial of Watanabe's application. Accordingly, we remand to the ERS Board for a hearing on the merits of Watanabe's exceptions.

## IV. CONCLUSION

We hold that Watanabe's Petitioner's Proposed Decision filing satisfies the standard for exceptions set forth in HAR § 6-23-19(a). We vacate the ICA's August 20, 2019 Judgment

---

[9] See supra note 8 for the relevant text of HRS § 91-11.

18

on Appeal which affirmed the circuit court's April 5, 2016 (1) Decision and Order Affirming the Final Decision of the ERS Board and Dismissing Appellant Watanabe's Appeal; and (2) Final Judgment.  We remand to the ERS Board for further proceedings consistent with this opinion.


Ted H.S. Hong
for petitioner

Patricia Ohara,
Clayton K.F. Zane and
Elmira K.L. Tsang
For respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

/s/ Todd W. Eddins

